IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pilkington N.A., Inc., et al.,            Case No. 3:01CV7617

       Plaintiffs

   v.                                                   ORDER

Travelers Casualty & Surety Co., et al.,

       Defendants

This is an insurance coverage case in which plaintiff, Pilkington North America, Inc. [Pilkington] demands coverage for environmental damage resulting from glass manufacture by Libbey Owens Ford Company [LOF] prior to 1986. The defendants Liberty Mutual Insurance Company [Liberty Mutual] and One Beacon Insurance Company [One Beacon] issued policies to LOF prior to that date.[1]

---

[1] Travelers Casualty and Surety Co. is no longer a party to this suit, having reached a settlement with plaintiff. One Beacon is the corporate successor to the company that issued some of the policies at issue.

1

Jurisdiction exists pursuant to 28 U.S.C. § 1332. On July 27, 2009, I granted plaintiff's motion for partial summary judgment. Pending is defendants' motion to reconsider [Doc. 264].[2] For the following reasons, defendants' motion is denied.

**Background**

Prior to 1986, LOF conducted its glass operations, which were a major part of its business, as a division within the corporation. In 1986, LOF incorporated a new wholly-owned subsidiary, LOF Glass Inc. [LOF Glass]. By means of a Transfer and Assumption Agreement [TAA], LOF transferred to LOF Glass the assets and liabilities of its glass division.

About a month thereafter, LOF entered into a Stock Exchange Agreement [SEA] with Pilkington Holdings, Inc., a British glass company that had acquired substantial share holdings in LOF. As part of the SEA, LOF Glass transferred its corporate name to Pilkington Holdings. This company is now known as Pilkington North America.[3] It continues to be a major glass manufacturer.

What remained of LOF then for a while became Trinova Corporation. That company is now known as Aeroquip Vickers, Inc.[4]

---

[2] Defendants filed two motions to reconsider, documents 264 and 265. These documents appear to be identical, so I will address them as one.

[3] Pilkington North America, the plaintiff, is the successor to LOF Glass. In this opinion the plaintiff is denominated "LOF Glass/Pilkington."

[4] There is one error in my original opinion that I wish to correct. In reviewing that order, I see that n.3 misstates how I refer to the entity now known as Aeroquip Vickers, Inc., the successor to the original LOF's non-glass business. As filed, that note states that I would refer to that entity as LOF/Pilkington. I did not do so: I referred to that entity as LOF/AVI.

Presently at issue in this case is whether the TAA transferred choses in action[5] as to insurance benefits for pre-1986 environmental liabilities from LOF/AVI to LOF Glass/Pilkington.

LOF Glass/Pilkington claims that the TAA effectuated such a transfer, so that it can assert claims for pre-1986 coverage for environmental liabilities against Liberty Mutual and One Beacon.[6] LOF/AVI agrees that the TAA transferred some of the choses in action from its corporate predecessor, LOF, to LOF Glass/Pilkington.

The defendant insurance companies disagree. They contend that the TAA did not transfer any choses in action from LOF/AVI to LOF Glass/Pilkington.

In my July 27, 2009, order, I described the issue presented as: were any choses in action with respect to insurance coverage for pre-existing environmental liabilities transferred from LOF/AVI to LOF Glass/Pilkington in the 1986 transactions? *Pilkington N.A., Inc. v. Travelers Cas. & Sur. Co.*, 2009 WL 2243590 (N.D. Ohio).

**Procedural History**

This case has a long and protracted history. LOF Glass/Pilkington filed suit on November 2, 2001, in the Lucas County, Ohio, Court of Common Pleas. Defendants removed the case to this court on December 5, 2001. In 2004, the parties filed cross-motions for summary judgment.

---

[5] A chose in action is: 1) a "proprietary right *in personam*, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort"; 2) the "right to bring an action to recover a debt, money, or thing"; and 3) "[p]ersonal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit." Black's Law Dictionary (8th ed. 2004).

[6] At issue, specifically, are choses in action relating to three "sand ponds" containing arsenic and ground glass.

On February 2, 2005, I certified three questions of Ohio law to the Ohio Supreme Court. These questions were:

> 1. Whether the demand by Pilkington North America for defense and indemnification, as asserted in this case, constitutes a chose in action under Ohio law;
>
> 2. If so, whether the policies' "anti-assignment" clauses bar acquisition by Pilkington North America of such chose in action; and
>
> 3. Whether by operation of law insurance benefits for the transferred liabilities at issue in this case were conveyed along with those liabilities such that Pilkington North America may, notwithstanding the policies' anti-assignment clauses, pursue insurance under the policies of the original LOF Glass for the environmental liabilities at issue here, which arise out of the original LOF Glass's operations.

*Pilkington N. Am.*, *Inc. v. Travelers Cas. & Sur. Co.*, 2005 WL 2319998, * 3 (N.D. Ohio).

On December 20, 2006, the Ohio Supreme Court answered my questions.

> {¶ 5} We answer the first question as follows: A chose in action arises under an occurrence-based insurance policy at the time the loss occurred.
>
> {¶ 6} As to the second question, we answer that such a chose in action is transferable despite the existence of an anti-assignment provision contained in the policy as to the duty to indemnify. We are unable to answer definitively whether such a chose in action is transferable as to the duty to defend.
>
> {¶ 7} As to the third question, we answer that when a covered occurrence under an insurance policy occurs before liability is transferred to a successor corporation, coverage does not arise by operation of law when the liability was assumed by contract.

*Pilkington N. Am.*, *Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 483 (2006).

On December 15, 2008, LOF Glass/Pilkington renewed its motion for partial summary judgment. On February 17, 2009, Liberty Mutual and One Beacon filed cross-motions for summary

judgment. On June 23, 2009, I heard oral arguments in this case, whereby LOF Glass/Pilkington, LOF/AVI, Liberty Mutual, and One Beacon all presented arguments supporting their motions.

On July 27, 2009, I granted plaintiff's motion for partial summary judgment and denied defendants' motion for summary judgment. In so doing, I held that the TAA transferred all of the choses in assets in question from LOF/AVI to LOF Glass/Pilkington. Defendants' pending motion to reconsider my decision to grant plaintiff's motion for partial summary judgment followed.

## Relevant Contractual Provisions

The pertinent provisions of the TAA are:

### Section 1 – Assignment and Transfer of Assets

> LOF will convey, assign, transfer and set over to LOF Glass all of LOF's right, title and interest in and to all of the rights and property. – real and personal, tangible and intangible, fixed and contingent, Of or Associated With the LOF Glass Business, including, without limitation, all of the assets reflected in the books of account of the LOF Glass Business as of the Effective Date, wherever located ("the LOF Glass Assets"). As used herein, the term "Of or Associated With" shall mean exclusively or primarily pertaining to, used in, arising out of or reasonably necessary for, the operation of the LOF Glass Business on a basis consistent with past practice.
>
> Except as set forth in Section 2 hereof, the LOF Glass Assets transferred hereunder shall include, but shall not be limited to, the following:
>
> (a) those assets listed on Schedule 1(a) hereto: . . .

### Section 2 – Assets Not Transferred

> The following are not included in the LOF Glass Assets and shall not be transferred by LOF or accepted by LOF Glass under the terms of this Agreement:
>
> (a) those assets listed on Schedule 2(a) hereto;

5

>(b) any asset or property of LOF not exclusively or primarily pertaining to, used in, arising out of, or reasonably necessary for, the operation of the LOF Glass Business on a basis consistent with past practice; and
>
>(c) any order, contract or agreement, or lease, that is not assignable or the assignment of which would cause a breach of, or default under, such order, contract or agreement, or lease.
>
>**Section 3.1 – Assumption of Liabilities**.
>
>>LOF Glass will, as of the Effective Date, assume and agree to pay, perform or discharge all of the following obligations and liabilities of LOF, however and whenever arising (the "LOF Glass Liabilities"):
>>
>>(a) all obligations and liabilities of LOF Of or Associated With the LOF Glass Business as of the Effective Date, whether known or unknown, and whether accrued, contingent, threatened or otherwise, . . .

The parties amended the TAA to address the issue of "retained liabilities." The pertinent amendment reads:

>**Section 3.2 – Retained Liabilities**
>
>>The Retained Liabilities (as hereinafter defined) shall be retained by LOF, and shall remain its liabilities. "Retained Liabilities" shall mean any and all damage, loss, liability and expense   .   .   .   in an aggregate amount up to but not exceeding $25,000,000, in connection with (a) any claim, action, suit or proceeding asserted or brought against LOF, or LOF Glass or its Affiliates, within the Period (as hereinafter defined), arising out of any fact or event, existing or occurring prior to the Closing Date (as hereinafter defined), that is referred to under the caption "Environmental" in the letter from LOF to LOF Glass of even date herewith (the "Disclosure Letter")  .  .  .
>
>**Section 4.1 – Indemnity**
>
>>LOF Glass agrees to indemnify and hold LOF harmless against and from any and all loss or damage, including attorney's fees and other costs and expenses, resulting from any obligation or liability founded upon or arising out of any the following:

6

>   (a) obligation or liabilities assumed by LOF Glass pursuant to Section 3 . . .

**Section 4.3(b) – Indemnity**

>   LOF hereby irrevocably waives the right to be indemnified by LOF Glass hereunder to the extent of any insurance proceeds or other recovery received by it with respect to any loss, damage, claim, liability or expense for which indemnification would otherwise be required hereunder, in excess of the amount of the deductibles under the insurance policies covering LOF and its affiliates.

Pertinent provisions of the SEA include:

**Section 7.07 – Insured Liabilities**

>   After the Closing Date, LOF will cooperate with LOF Glass in pursuing diligently any claim LOF or LOF Glass may have against any insurer with respect to any liability associated with the LOF Glass Business or LOF Glass, incurred or arising out of events prior to the Closing Date. LOF will use its best efforts to maintain in effect any insurance coverage in effect on the Closing Date which covers liabilities associated with the LOF Glass Business or LOF Glass and incurred or arising out of events prior to the Closing Date; provided that LOF shall not be required to pay any additional premiums in respect of such policies.

**Section 12.07 – Indemnification by LOF for Certain Environmental and OSHA Matters**.

>   (a) For a period of twenty years from the Closing Date, LOF shall indemnify LOF Glass and its Affiliates against and agrees to hold them harmless from any and all damage, loss, liability and expense . . . in an aggregate amount up to but not exceeding $25,000,000 incurred or suffered by LOF Glass and its Affiliates in connection with (i) any claim, action, suit or proceeding asserted or brought against LOF Glass or its Affiliates arising out of any fact or event existing or occurring prior to the Closing Date, that is referred to under the caption "Environmental" in the letter from LOF to Pilkington of even date hereof, as supplemented through the Closing Date (the "Disclosure Letter").
>
>   (b) It is agreed that, for purposes of this Section 12.07, LOF shall not be deemed to have paid for, and its obligations pursuant to this

7

> Section 12.07 shall not be reduced by, any payments made by, or reimbursed or reimbursable by, any insurance companies by virtue of any insurance coverage of the LOF Glass Business in effect on or prior to the Closing Date.[7]

## Standard of Review

A motion to amend or alter judgment under the Federal Rules of Civil Procedure 59(e) calls for the court to reconsider its decision after the entry of final judgment. Fed.R.Civ.P. 59(e); *Pechatsko v. Comm'r of Soc. Sec.*, 369 F. Supp. 2d 909, 911 (N.D. Ohio 2004). The motion is not a substitute for appeal and does not give an unhappy litigant a basis for rearguing the case. *Id.*

Only three situations justify altering or amending a judgment under Rule 59(e): 1) newly discovered evidence; 2) an intervening change in controlling law; or 3) a need to correct clear legal error to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). A district court has great discretion in deciding whether to grant relief under Rule 59(e). *Id.* at 619-20.

I have repeatedly expressed my disapproval of motions to reconsider. As I stated in *Miller v. Norfolk Southern Rwy. Co.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002):

> [A] trial court should not be called on to redo work that it did once, and believes that it did thoroughly and properly. Disappointed counsel might sincerely believe that the Court of Appeals might find the work not to have been done properly. But that does not justify making the trial court do the work again, unless it disregarded or overlooked a material argument or controlling authority in the original opinion, there is evidence that previously could not have been submitted, or there has been an intervening and controlling decision by a higher court, or the original order contains an indisputable and manifest error of fact or law.

---

[7] Pursuant to these provisions, LOF Glass/Pilkington submitted invoices for environmental and other costs to Trinova [LOF's successor, and predecessor of LOF/AVI] which were paid until the $25 million was exhausted in 1995.

**Discussion**

Defendants contend that my July 27, 2009, opinion contained clear error suitable for correction *via* a motion to reconsider. Specifically, they argue that I drew impermissible factual inferences as to the parties' intent in favor of LOF Glass/Pilkington and improperly considered extrinsic evidence.

Defendants' arguments are not well-taken.

**1. Impermissible Factual Inferences**

Defendants argue that in analyzing LOF Glass/Pilkington's motion for summary judgment, I did not view the facts in the light most favorable to the defendants, as Rule 56 requires.

Defendants specifically point to my interpretation of TAA § 4.3(b), which I viewed as means by which LOF/Pilkington was assured of some recovery for the costs to be incurred during environmental remediation of the sand ponds. At the time of the agreements, Ohio law was uncertain as to the transferability of choses in action. In the course of interpreting the TAA and SEA, I noted the uncertainty about the transferability of choses in action, insurance coverage and on whom liability and the concomitant right to seek coverage might ultimately fall. Defendants contend that drawing this set of inferences was improper and impermissible.

I disagree: under basic principles of contract interpretation, I must interpret the contract as a whole and harmonize its provisions. *Christe v. GMS Mgt. Co.*, 124 Ohio App.3d 84, 88 (1997) (citing 18 Ohio Jur.3d (1980), Contracts, § 157)). As explained in *Portage Chrysler Plymouth, Inc. v. Heisler*, 1977 WL 199490, * 7 (Ohio App.) (citing 11 O.Jur. 2d 399, § 155):

> In construing a written instrument, effect should be given to all of its words if this can be done by any reasonable interpretation; and it is the duty of a court to give effect to all parts of a written contract, if this can be done consistently with the expressed intent of the parties. If possible, every provision in a contract should be

held to have been inserted for some purpose and to perform some office, and an attempt must be made to harmonize, if possible, all the provisions of a contract. Accordingly, courts will adopt that construction of a contract which gives harmonious effect to all its provisions, if it is reasonably susceptible of such construction, rather than one which must produce a conflict between both of those provisions. And as between two constructions both equally susceptible of acceptance, that one will be adopted which gives operative effect to all the provisions of a contract, rather than one which leaves some provisions dormant and ineffectual.

Standing alone, TAA § 4.3 might be subject to differing interpretations. But contract provisions rarely stand entirely alone. This one certainly does not.

Reading and giving effect to all of the provisions of the TAA, as Ohio law compels me to do, there is only one reasonable interpretation – the one I reached and relied on – which can be harmonized with the rest of the TAA. I was not, as defendants contend, drawing impermissible factual inferences. I was instead, harmonizing the contract's provisions, as required by fundamental contract principles.

Defendants did not and do not offer a reasonable interpretation which harmonizes its interpretation of TAA § 4.3 with the remainder of the TAA. As such, my holding that the TAA transferred all choses in action in question need not be revisited or retracted.[8]

Defendants also contend that my interpretation of SEA §12.07 drew impermissible inferences. For the same reasons discussed with regard to TAA § 4.3, my interpretation was not improper.

---

[8] As Pilkington noted in earlier briefing, One Beacon is a stranger to the TAA. Both Pilkington and Aeroquip Vickers, the successors to the signatories, agree that the TAA transferred the choses in action in issue in this case. While their concurrence is not dispositive, it should not be overlooked entirely.

**2. Extrinsic Evidence**

One Beacon complains that I looked to extrinsic evidence – namely, an article noting the unavailability of environmental insurance for pre-existing environmental losses – when interpreting SEA § 7.07.

That article was referenced during oral argument on the parties' motions for summary judgment. There was no objection to its mention, or the information relayed to me at the time. There was, moreover, no contemporaneous contention that the information was untrue or unreliable. On this basis alone, I do not believe I can be faulted for thereafter having that information before me when I was working on the order defendants now want me to reconsider.

In any event, that information simply was not dispositive. While it may have added some weight to my decision, it did not tip the balance in plaintiff's favor.

Moreover, as I explained with regard to One Beacon's challenges to my interpretations of TAA § 4.3 and SEA § 12.07(b), I interpreted SEA § 7.07 in such a way to harmonize it with the TAA's provisions. Despite its arguments, One Beacon has not proffered an alternative reasonable interpretation of the TAA that harmonizes all of its provisions.[9]

**Conclusion**

One Beacon is unhappy with my decision. It is common for one litigant or other, or sometimes both, to think I erred. I am not persuaded by One Beacon's motion for reconsideration that I did so.

---

[9] The TAA and SEA are independent, but hardly unrelated contracts. They were linked steps toward a common goal – transfer of LOF's glass operations to Pilkington. That being so, reading both, and seeking to harmonize their provisions, not just within each contract, but with regard to the other contract as well, is entirely appropriate.

11

One Beacon's motion is, most simply put, a restatement and resubmission, in part, of arguments that I took into account in reaching my original decision. To the extent that the motion for reconsideration adds something new, it complains about inferences that One Beacon believes I drew improperly in the course of trying to understand the TAA.

What matters is not what inferences I might have drawn, but whether the result I reached is a proper interpretation of the terms of the contracts. One Beacon has not shown what different result I should or would have reached, were I to have avoided the alleged errors of which it complains.

It was my duty, more than twenty years after the fact, to try to give meaning to all the terms of the TAA and SEA. It was also my duty to read the contracts and their provisions in concert with one another. To that end, it was appropriate to be mindful of what the parties were trying to accomplish.

Nothing in One Beacon's motion tells me I made a clear and indisputable error of law, overlooked binding precedent or need now to look at newly developed and otherwise unavailable evidence. That being so, it is not entitled to reconsideration of my decision.

Finding no reason to reconsider or change my decision, I award, as One Beacon knows is my practice, attorneys' fees and costs to plaintiff.

Plaintiff shall forthwith notify One Beacon of the expenses its has incurred in responding to One Beacon's motion for reconsideration. Unless One Beacon objects to the amount stated, it shall make payment promptly. If it objects, the dispute shall be submitted to me for adjudication, with the loser reimbursing the prevailing party for the additional expenses incurred in *that* exercise.

It is, therefore,

ORDERED THAT:

1. The motion of One Beacon America Insurance Company for reconsideration [Doc. 264] be, and the same hereby is overruled; and

2. One Beacon shall pay the attorneys' fees and costs incurred by plaintiff in responding to its motion for reconsideration.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
